**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:22-cv-00024-MR-WCM**

| | | |
|---|---|---|
| **FRANKENMUTH MUTUAL** | ) | |
| **INSURANCE CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **NATIONAL BRIDGE BUILDERS, LLC,** | ) | |
| **WILLIAM H. WEST, III, WILLIAM H.** | ) | |
| **WEST, IV, GEMINI III TRUST, and** | ) | |
| **GEMINI IV TRUST,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for
Preliminary Injunction Compelling Deposit of Collateral and Access to Books
and Records [Doc. 13], the Plaintiff's Motion to Withdraw Motion for
Preliminary Injunction [Doc. 40], and the Plaintiff's Second Motion for
Preliminary Injunction Compelling Deposit of Collateral and Access to Books
and Records [Doc. 37].

# I.   PROCEDURAL BACKGROUND

On February 10, 2022, the Plaintiff, Frankenmuth Mutual Insurance
Company ("Plaintiff"), initiated this action against Defendants National Bridge

Builders, LLC ("National Bridge"), William H. West, III, William H. West, IV, Gemini III Trust, and Gemini IV Trust. [Doc. 1]. In its Complaint, the Plaintiff asserts that it is entitled to a judgment compelling the Defendants to deposit collateral with the Plaintiff and allow the Plaintiff access to books and records. [Doc. 1 at ¶¶ 49-76]. The Plaintiff also asserts claims for breach of contract, conversion, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. [Id. at ¶¶ 90-117]. The Plaintiff further asserts that Defendant National Bridge failed to deposit certain proceeds as required by the parties' General Agreement of Indemnity (the "Indemnity Agreement") and that Defendants William H. West, III and William H. West, IV received and retained proceeds that rightfully belong to the Plaintiff. [Id. at ¶¶ 77-89, 118-120]. On May 11, 2022, Defendant National Bridge asserted Counterclaims against the Plaintiff for fraud in the inducement and unfair and deceptive trade practices. [Doc. 10 at ¶¶ 25-43].

On June 16, 2022, the Plaintiff filed a Motion for Preliminary Injunction seeking a preliminary injunction compelling the Defendants to deposit collateral security with the Plaintiff in the amount of $17,000,000 and to allow the Plaintiff access to the Defendants' books and records. [Doc. 13].

On July 28, 2022, Defendants William H. West, III, William H. West, IV, Gemini III Trust, and Gemini IV Trust moved to dismiss the Plaintiff's claims

against them. [Doc. 28]. On August 30, 2022, the Plaintiff moved to voluntarily dismiss its claims against Defendants William H. West, III, William H. West, IV, Gemini III Trust, and Gemini IV Trust. [Doc. 33]. On September 1, 2022, this Court dismissed the Plaintiff's claims against Defendants William H. West, III, William H. West, IV, Gemini III Trust, and Gemini IV Trust, thereby leaving Defendant National Bridge as the only remaining defendant in this action. [Doc. 34].

On October 31, 2022, the Plaintiff filed a Motion to Withdraw Motion for Preliminary Injunction. [Doc. 40]. Simultaneously, the Plaintiff filed a Second Motion for Preliminary Injunction Compelling Deposit of Collateral and Access to Books and Records ("Second Motion for Preliminary Injunction"). [Doc. 37]. In its Second Motion for Preliminary Injunction, the Plaintiff seeks an injunction compelling Defendant National Bridge to "(1) deposit funds or other collateral security with [the Plaintiff] in the amount of $15,910,811.76, which is the minimum amount [the Plaintiff] has determined to be sufficient to discharge any actual or anticipated 'Loss,' and (2) furnish [the Plaintiff] immediate access to [the Defendant's] books, records, accounts, etc. for copying, examination, and/or auditing." [Id. at 1].

## II.    STANDARD OF REVIEW

A plaintiff seeking a preliminary injunction must demonstrate that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent injunctive relief, (3) the balance of equities tip in his favor, and (4) the injunction would be in the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  Id. at 24.  Thus, in each case the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987).  Ultimately, a plaintiff's entitlement to preliminary injunctive relief is a matter of discretion with the Court.  See Metro. Regul. Info. Sys., Inc. v. Am. Home Realty Network, Inc., 722 F.3d 591, 595 (4th Cir. 2013).

"When considering a motion for preliminary injunction, a district court may assess the relative strength and persuasiveness of the evidence presented by the parties, and is not required to resolve factual disputes in favor of the non-moving party."  Queen Virgin Remy, Co. v. Thomason, No. 1:15-cv-1638-SCJ, 2015 WL 11422300, at *2 (N.D. Ga. June 10, 2015), modified No. 1:15-cv-1638-SCJ, 2015 WL 11455760 (N.D. Ga. Oct. 21, 2015) (citing Imaging Bus. Machs., LLC v. BancTec, Inc., 459 F.3d 1186,

4

1192 (11th Cir. 2006)). If the evidence is contested, however, the court must "assess the facts, draw whatever reasonable inferences it might favor, and decide the likely ramifications." Weaver v. Henderson, 984 F.2d 11, 14 (1st Cir. 1993) (quoting Indep. Oil & Chem. Workers of Quincy, Inc. v. Proctor & Gamble Mfg. Co., 864 F.2d 927, 933 (1st Cir. 1988)).

At the preliminary injunction stage, allegations set forth in a verified complaint are treated the same as affidavits. IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537, 542 (7th Cir. 1998) (noting that "[v]erified complaints [are] the equivalent of affidavits"); Synthes USA, LLC v. Davis, No. 4:17-cv-02879-RBH, 2017 WL 5972705, at *1 n.2 (D.S.C. Dec. 1, 2017) (explaining that "a verified complaint is wholly sufficient for purposes of ruling on a preliminary injunction motion.") (citation omitted).[1]

## III.   FACTUAL BACKGROUND

The Plaintiff is a corporation incorporated under the laws of the State of Michigan, and it has its principal place of business in Michigan. [Doc. 1 at ¶ 1]. Defendant National Bridge is a limited liability company incorporated in 2017 under the laws of the State of North Carolina. [Id. at ¶¶ 2, 12].

---

[1] "In fact, the Fourth Circuit has indicated a complaint—verified or not—must be considered." Synthes USA, 2017 WL 5972705, at *1 n.2 (citing G.G. ex. rel. Grimm v. Gloucester Cty. Sch. Bd., 822 F.3d 709, 725-26 (4th Cir. 2016), vacated and remanded on other grounds, 137 S. Ct. 1239 (2017)).

The Defendant is engaged in the construction contracting business, including construction activities on public projects in North Carolina, South Carolina, and Virginia. [Id. at ¶ 12]. To perform construction activities on public projects, the Defendant is sometimes required to obtain surety bonds from sureties like the Plaintiff. [Id. at ¶ 13]. The Plaintiff agreed to issue multi-million-dollar surety bonds on behalf of Defendant National Bridge, and the parties executed an Indemnity Agreement on or about August 22, 2018. [Id. at ¶ 16; Second Maloney Dec., Doc. 39 at ¶ 2]. The Indemnity Agreement requires the Defendant to indemnify the Plaintiff from all "Loss"[2] and grants the Plaintiff the right, in its sole discretion, to settle any claim against any bond. [Doc. 1 at ¶¶ 25-26; Doc. 1-1 at 3].

Paragraph 5 of the Indemnity Agreement further requires the Defendant to deposit collateral with the Plaintiff. [Doc. 1-1 at 3]. On this point, the Indemnity Agreement states as follows:

> Indemnitors agree to deposit with [the Plaintiff], upon demand, funds, other collateral security acceptable to [the Plaintiff], in an amount as determined by [the Plaintiff] sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with [the Plaintiff], upon demand, an amount

---

[2] Regarding "Loss," the Indemnity Agreement provides, in part, that the "[i]ndemnitors' liability to [the Plaintiff] includes all Loss, all payments made, and all actions taken by [the Plaintiff] under the Good Faith belief that [the Plaintiff] is, would be or was liable for the Loss, the amounts paid or the actions taken or that it was necessary or expedient to incur such Loss, make such payments or take such actions, whether or not such liability, necessity or expediency existed." [Doc. 1-1 at 2].

equal to the value of any assets or Contract funds improperly diverted by any Indemnitor. Sums deposited with [the Plaintiff] pursuant to this paragraph may be used by [the Plaintiff] to pay such claim or be held by [the Plaintiff] as collateral security against any Loss or unpaid premium on any Bond. [The Plaintiff] shall have no duty to invest, or provide interest on the collateral. Indemnitors agree that [the Plaintiff] would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph. Any remaining funds held by [the Plaintiff] after payment of all sums due to [the Plaintiff] under this Agreement shall be returned upon the complete release and/or discharge of [the Plaintiff's] liability under all Bonds. In addition to the foregoing, Indemnitors shall promptly, on [the Plaintiff's] written demand, procure the full and complete discharge of [the Plaintiff] from all Bonds demanded by [the Plaintiff] and all liability in connection with such Bonds. If indemnitors are unable to obtain such discharge within the time demanded, Indemnitors shall promptly deposit with [the Plaintiff] an amount of money that [the Plaintiff] determines is sufficient to collateralize or pay any outstanding bonded obligations, or otherwise make provisions acceptable to [the Plaintiff] for the funding of the bonded obligations.

[Id.].

Paragraph 12 of the Indemnity Agreement also requires the Defendant to provide the Plaintiff access to the Defendant's books and records. [Id. at 4]. This provision of the Indemnity Agreement states as follows:

Indemnitors shall furnish upon demand, and [the Plaintiff] shall have the right of free access to, at reasonable times, the records of Indemnitors

7

including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authorize [the Plaintiff] to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested by [the Plaintiff], and if so, of the name and address of the consumer reporting agency furnishing the report.

[Id.]. Paragraph 25 of the Indemnity Agreement further provides that:

Indemnitor shall permit any of [the Plaintiff's] officers, employees, agents or other representatives to visit and inspect upon reasonable notice during business hours any of the locations of Indemnitor (provided that, while a Default exists, [the Plaintiff] may make such visits and inspections at any time without prior notice), to examine and audit all of Indemnitor's Property, books of account, records, reports and other papers, to make copies and extracts therefrom and to discuss its affairs, finances and accounts with its officers, employees and independent certified public accountants. Indemnitors shall incur expenses at the standard rates charged by [the Plaintiff] for such activities when an open claim or default exists. Should [the Plaintiff] deem it necessary to visit and inspect when no claim or default exists, it shall do so at its own expense.

[Id. at 7].

In 2019, the Plaintiff began receiving claims against the bonds and notices of the Defendant's alleged breaches under bonded contracts.

[Second Maloney Dec., Doc. 39 at ¶ 3]. On April 12, 2019, the North Carolina Department of Transportation ("NCDOT") notified the Plaintiff that the Defendant had made "unsatisfactory" progress under a contract covered by Bond No. SUR 2001132. [Id.; see also Doc. 39-2]. By January of 2020, the Defendant's subcontractors and suppliers had "asserted claims against [the Plaintiff] under nine of the Bonds in an amount that exceeded $1,000,000." [Second Maloney Dec., Doc. 39 at ¶ 3]. On July 2, 2020, the NCDOT again notified the Plaintiff that the Defendant had made "unsatisfactory" progress under a contract covered by Bond No. SUR 0002256. [Id.; see also Doc. 39-3]. On November 23, 2020, the NCDOT declared the Defendant to be in "material breach" under the contract covered by Bond No. SUR2001135, and the Defendant was subsequently removed from the NCDOT's prequalified bidder's list in August of 2021. [Second Maloney Dec., Doc. 39 at ¶ 3; see also Doc. 39-4, Doc. 39-5].

In September of 2021, Defendant National Bridge advised the Plaintiff that it lacked the financial means to pay its vendors, subcontractors, and employees under contracts covered by the bonds, thereby exposing the Plaintiff to "Loss" under the bonds. [Second Maloney Dec., Doc. 39, at ¶ 4]. The Defendant informed the Plaintiff that it needed $1.5 million to complete the projects. [Doc. 10 at ¶ 9; see also Doc. 39-9]. According to Defendant

9

National Bridge, the Plaintiff agreed to advance $1.5 million. [Doc. 10 at ¶¶ 9-23]. On September 15, 2021, the Plaintiff advanced $750,000 to the Defendant. [Doc. 10 at ¶ 15; Second Maloney Dec., Doc. 39 at ¶ 5].

On December 9, 2021, the Plaintiff sent a letter to the Defendant advising that it would consider advancing an additional $750,000 to the Defendant if National Bridge, Gemini III Trust, and Gemini IV Trust agreed to certain conditions. [Id. at ¶ 6; Doc. 39-9]. The Plaintiff set the following conditions:

> Frankenmuth is immediately provided with the outstanding financial information and is given full and complete access to the Books and Records of National Bridge, Gemini III Trust and Gemini IV Trust

> Frankenmuth is immediately provided with the outstanding project information, is given full and complete access to the records of the projects for which it issued Bonds and will be given unfettered access to the project sites and National Bridge's project management.

> National Bridge will notify the Obligees on the Frankenmuth-bonded projects that all contract balances are to be deposited into a designated account (the account information to be provided by Frankenmuth).

[Doc. 39-9 at 2]. The December 9, 2021 letter further addressed the Defendant's obligation to provide the Plaintiff access to books and records, stating that:

> While Frankenmuth has made repeated requests to National Bridge for its financial and project information, *only limited information has been provided by National Bridge.* During a recently scheduled meeting at National Bridge's office, Frankenmuth was advised that the requested information, which is an obligation of National Bridge to provide, would not be produced until additional funding was received from Frankenmuth.

[Id.] (emphasis added). The Defendant did not satisfy the conditions set forth by the Plaintiff, and the Plaintiff did not provide the additional $750,000 in funding. [Second Maloney Dec., Doc. 39 at ¶ 6]. Subsequently, Defendant National Bridge defaulted under multiple contracts covered by the bonds. [Id. at ¶ 8].

In a letter dated December 20, 2021, the Plaintiff informed Defendant National Bridge that the Plaintiff had received claims from National Bridge's subcontractors and suppliers in excess of $1,137,528. [Id. at ¶ 7; Doc. 39-10 at 2]. The Plaintiff demanded that the Defendant deposit $1,137,528.81 in collateral with the Plaintiff. [Doc. 39-10 at 2]. The Plaintiff further demanded that the Defendant provide "full and complete access to all of the financial information and records and the records of all of the projects on which Frankenmuth issued Bonds." [Id. at 3].

In a letter dated January 7, 2022, the Plaintiff informed Defendant National Bridge that the Plaintiff had incurred losses or anticipated losses in

excess of $1,409,932.78. [Doc. 39-11 at 5]. The Plaintiff demanded that the Defendant deposit "$1,409,932.78 in acceptable collateral with Frankenmuth" and further demanded "immediate access to National Bridge's books, records, etc. for examination, inspection, and auditing." [Id. at 6].

As of October 31, 2022, the Defendant has been declared to be in default under bonded contracts totaling $31,321,509.50. [Second Maloney Dec., Doc. 39 at ¶ 8]. Further, the Plaintiff has already paid net "Loss" totaling $2,226,339.05 relative to the bonded contracts with the NCDOT, and the Plaintiff estimates that it will incur additional "Loss" of $13,684,472.71. [Id.]. Despite multiple requests from the Plaintiff, the Defendant has not provided any collateral to the Plaintiff, and the Defendant has not provided the Plaintiff with full access to their books and records. [Id. at ¶ 7].

## IV. DISCUSSION

The Plaintiff seeks a preliminary injunction compelling Defendant National Bridge to deposit collateral with the Plaintiff in the amount of $15,910,811.76 and to allow the Plaintiff access to Defendant National Bridge's books, records, and accounts for copying, examination, and auditing. [Doc. 37]. The relief that the Plaintiff seeks would provide remedies under Count One and Count Two of the Plaintiff's Complaint. In Count One, the Plaintiff alleges that Defendant National Bridge's "failure to deposit the

demanded collateral with [the Plaintiff] constitutes a material breach of Paragraph 5 of the Indemnity Agreement," and the Plaintiff seeks a judgment compelling the Defendant to deposit collateral with the Plaintiff. [Doc. 1 at ¶¶ 49-63]. In Count Two, the Plaintiff alleges that Defendant National Bridge's "failure to make its books, records, etc. available for examination, copying, and/or auditing constitutes a material breach of Paragraphs 12 and 25 of the Indemnity Agreement," and the Plaintiff seeks a judgment compelling the Defendant to make its books and records available to the Plaintiff. [Id. at ¶¶ 64-76]. Accordingly, the Court will address the Plaintiff's Second Motion for Preliminary Injunction only with respect to the Plaintiff's claims that Defendant National Bridge has breached the collateral security and financial records provisions of the Indemnity Agreement. See First Nat'l Ins. Co. of Am. v. Sappah Bros. Inc., 771 F. Supp. 2d 569, 571-72 (E.D.N.C. 2011) ("[T]he court notes that it is not evaluating First National's likelihood of success on each claim alleged. Rather, because First National seeks preliminary injunctive relief based solely on alleged breach of the collateral security and the financial records provisions of the indemnity agreement, the court analyzes only the claim for breach of contract seeking specific performance of those contractual provisions.").

## A.    Likelihood of Success on the Merits

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000) (citation omitted).    "To obtain the remedy of specific performance for the breach, the plaintiff 'must show the existence of a valid contract, its terms, and either full performance on his part or that he is ready, willing and able to perform.'" First Nat'l Ins. Co. of Am., 771 F. Supp. 2d at 572 (quoting Ball v. Maynard, 184 N.C. App. 99, 107, 645 S.E.2d 890, 896 (N.C. Ct. App.)).

Defendant National Bridge does not dispute the validity of the Indemnity Agreement.    The collateral security provision of the Indemnity Agreement requires the Defendant "to deposit with [the Plaintiff], upon demand, funds, other collateral security acceptable to [the Plaintiff], in an amount as determined by [the Plaintiff] sufficient to discharge any Loss or anticipated Loss." [Doc. 1-1 at 3].  The Plaintiff has presented a letter dated January 7, 2022 in which it demanded collateral from the Defendant.  [Doc. 39-11; Doc. 1 at ¶ 55].  The Plaintiff has further presented the Declaration of Kathleen Maloney, the Director of Surety Claims for the Plaintiff, who stated

14

that, despite repeated demands from the Plaintiff, the Defendant has "failed to deposit a penny of collateral." [Second Maloney Dec., Doc. 39 at ¶ 7].

Defendant National Bridge argues that the Plaintiff is not likely to succeed on the merits because the Plaintiff's failure to advance an additional $750,000 to the Defendant caused the Defendant to default under bonded contracts. [Doc. 24 at 11-13]. According to the Defendant, because the Plaintiff "created [National Bridge's] defaults," it should, therefore, "be precluded from benefiting from defaults and potential breaches that it caused." [Id. at 13]. Notably, however, there is no provision in the Indemnity Agreement requiring the Plaintiff to advance funds to the Defendant. Rather, the Indemnity Agreement requires the Defendant to deposit collateral with the Plaintiff upon demand [Doc. 1-1 at 3]. The Defendant's assertion that the Plaintiff breached a separate promise to advance an additional $750,000 to the Defendant is irrelevant to the Defendant's obligation to deposit collateral preliminarily under the Indemnity Agreement's collateral security provision.[3] See First Nat'l Ins. Co. of Am., 771 F. Supp. 2d at 574 (holding, in part, that "while the issue of whether [surety] acted in good faith may be

---

[3] The Court does not, however, comment on the merits of Defendant National Bridge's Counterclaim against the Plaintiff, in which the Defendant asserts claims for fraud in the inducement and unfair and deceptive trade practices related to the Plaintiff's alleged promise to advance a total of $1.5 million to the Defendant. [See Doc. 10 at ¶¶ 25-43].

relevant to whether defendants ultimately are liable to [surety] for indemnification under their agreement, it is irrelevant to whether defendants are required to post collateral security preliminarily").

The Defendant also argues that the Plaintiff has not demonstrated that it is entitled to the amount of collateral that it seeks.[4]  [Doc. 24 at 9-10]. However, the Plaintiff has presented evidence that, as of October 31, 2022, the Plaintiff has already paid net "Loss" totaling $2,226,339.05 relative to the bonded contracts with the NCDOT, and the Plaintiff estimates that it will incur additional "Loss" of $13,684,472.71.  [Second Maloney Dec., Doc. 39 at ¶ 8]. Further, the Indemnity Agreement provides that the Defendant is obligated to deposit collateral with the Plaintiff, upon demand, "in an amount *as determined by [the Plaintiff].*"  [Doc. 1-1 at 3].  Accordingly, the Plaintiff has demonstrated that it is likely to succeed on its claim that Defendant National Bridge breached the Indemnity Agreement's collateral security provision and that it is now entitled to $15,910,811.76 in collateral.[5]

---

[4] Defendant National Bridge specifically asserts that the Plaintiff has not demonstrated that it is entitled to the $17,000,000 of collateral requested by the Plaintiff in its first Motion for Preliminary Injunction.  [Doc. 24 at 9-10].

[5] The Court notes that although the Plaintiff's Second Motion for Preliminary Injunction seeks an injunction compelling the Defendant to deposit $15,910,811.76 in collateral, [Doc. 37], the Plaintiff's Complaint seeks a judgment compelling the Defendant to deposit only $2,383,291.00 in collateral, [Doc. 1 at ¶ 63]. This discrepancy does not change the Court's analysis that the Plaintiff is likely to succeed on the merits because the Plaintiff has presented evidence that (1) it has the right under the Indemnity Agreement to

The Indemnity Agreement further provides that the Plaintiff "shall have the right of free access to, at reasonable times, the records of [the Defendant] including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them." [Doc. 1-1 at 4]. Here, the Plaintiff has provided the Declaration of Kathleen Maloney, who states that the Defendant has failed to provide the Plaintiff with access to the Defendant's books and records and that the Defendant has instead "held its books, records, accounts, etc. ransom by conditioning their release upon [the Plaintiff's] payment to National Bridge[.]" [Second Maloney Dec., Doc. 39 at ¶ 7] (emphasis added). The Plaintiff has also presented a letter from the Plaintiff to the Defendant in December of 2021 stating that "[w]hile [the Plaintiff] has made repeated requests to National Bridge for its financial and project information, *only limited information has been provided*[.]" [Doc. 39-9 at 2] (emphasis added). Further, although the Defendant now argues that it has already "provided Plaintiff with access to *all* Project accounting, books, records, accounts, etc. for purposes of copying, examination, and/or auditing," [Doc. 24 at 18] (emphasis added), the Defendant's Counterclaim

_____

determine an acceptable amount of collateral, [Doc. 1-1 at 3], and (2) the Plaintiff's "Loss" or anticipated "Loss" now exceeds $15,910,811.76. [Second Maloney Dec., Doc. 39 at ¶ 8].

seems to allege that the Defendant has provided checks, invoices, lien waivers, and financial statements *related only to the $750,000 advanced by the Plaintiff*, [Doc. 10 at ¶¶ 16-22, 31]. Accordingly, the Plaintiff has demonstrated that it is likely to succeed on its claim that the Defendant breached the Indemnity Agreement's financial records provision by failing to provide the Plaintiff with access to *all* of the books and records requested.

## B. Irreparable Harm

The Supreme Court's "frequently reiterated standard requires [a plaintiff] seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." Winter, 555 U.S. at 22. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction are not enough." Roe v. Dep't of Def., 947 F.3d 207, 228 (4th Cir. 2020) (quoting Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017)) (internal quotation marks and alteration omitted).

"Courts routinely recognize that a surety's loss of its right to collateralization cannot be adequately remedied through monetary damages." First Nat'l Ins. Co. of Am., 771 F. Supp. 2d at 574 (internal citation and quotation marks omitted); Frankenmuth Mutual Ins. Co. v. Caden Constr. Co., No. 1:19-cv-01125, 2020 WL 2322726, at *4 (M.D.N.C. May 11,

2020); Int'l Fidelity Ins. Co. v. Waterfront Grp. N.C., LLC, No. 3:11-cv-00116, 2011 WL 4715155, at *4 (W.D.N.C. Oct. 6, 2011); Great Am. Ins. Co. v. Global Team Elec., LLC, No. 3:20-cv-00218-RJC-DSC, 2020 WL 2527034, at *6 (W.D.N.C. May 18, 2020). "This is so because the surety holds a bargained-for right to collateral security and, without enforcement of such right, assumes the risk of becoming a general unsecured creditor and of being unable to collect a subsequent judgment in its favor." Great Am. Ins. Co., 2020 WL 2527034, at *6 (internal citation and quotation marks omitted).

Here, the parties agreed in the Indemnity Agreement that the Defendant would deposit collateral with the Plaintiff upon demand and that the Plaintiff "*would suffer irreparable damage and would not have an adequate remedy at law* if Indemnitors fail to comply with the [collateral security provision." [Doc. 1-1 at 3] (emphasis added). The Plaintiff has presented evidence that, as of October 31, 2022, the Defendant has been declared to be in default under multiple contracts covered by a total of $31,321,509.50 in bonds, and the Plaintiff now estimates that its total exposure to "Loss" and anticipated "Loss" exceeds $15,910,811.76. [Second Maloney Dec., Doc. 39 at ¶ 8]. Accordingly, the Plaintiff has demonstrated that, in the absence of injunctive relief compelling the Defendant to deposit $15,910,811.76 in collateral, it risks becoming "a

general unsecured creditor" and would, therefore, suffer irreparable harm. <u>Great Am. Ins. Co.</u>, 2020 WL 2527034, at *6

Further, absent access to books and records, a surety is "in the dark as to [its] chances of successful performance of the contract and ha[s] no idea whether and [to] what extent [an indemnitor] can satisfy their indemnity obligation." <u>Id.</u> at *7 (internal citation and quotation marks omitted). The Plaintiff alleges that, without access to the Defendant's books and records, the Plaintiff "is being deprived of its bargained for right to examine, copy, and/or audit information that is vital to [the Plaintiff's] assessment and mitigation of its 'Loss' and/or anticipated 'Loss' under the 'Bonds.'" [Doc. 1 at ¶ 72]. Accordingly, the Plaintiff has also demonstrated that it would suffer irreparable harm in the absence of an injunction compelling Defendant National Bridge to provide access to its books and records.

### C. Balance of Equities

A plaintiff seeking a preliminary injunction must establish that the balance of equities tips in its favor. <u>Winter</u>, 555 U.S. at 20. "[I]n each case the Court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" <u>Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.</u>, No. 17-cv-00150-MR-DLH, 2017 WL 3838638, at *1 (W.D.N.C. Sept. 1, 2017)

20

(Reidinger, J.) (quoting Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542 (1987)).

Here, "[a]bsent preliminary relief enforcing the collateral security provision, [the Plaintiff] would bear the entire loss on the bond claims without being collateralized, a right to which it explicitly bargained in the [I]ndemnity [A]greement." Great Am. Ins. Co., 2020 WL 2527034, at *7 (internal citation and quotation marks omitted). An injunction compelling Defendant National Bridge to deposit collateral with the Plaintiff and provide the Plaintiff access to the Defendant's books and records would merely "require [the Defendant] to perform as [it] contractually-obligated [itself] to do." Int'l Fidelity Ins. Co., 2011 WL 4715155, at *5; see also Great Am. Ins. Co., 2020 WL 2527034, at *7. Further, to minimize any potential financial harm to the Defendant, the Indemnity Agreement provides that "[a]ny remaining funds held by [the Plaintiff] after payment of all sums due to [the Plaintiff] . . . shall be returned [to the Defendant] upon the complete release and/or discharge of [the Plaintiff's] liability under all Bonds." [Doc. 1-1 at 3]; see also Int'l Fidelity Ins. Co., 2011 WL 4715155, at *5; First Nat'l Ins. Co. of Am., 771 F. Supp. 2d at 575. Accordingly, the balance of the equities are in favor of the Plaintiff.

### D. Public Interest

A plaintiff seeking a preliminary injunction must establish that the granting of an injunction is in the public interest. <u>Winter</u>, 555 U.S. at 20. "The public has an interest in ensuring that contracts are enforced." <u>Great Am. Ins. Co.</u>, 2020 WL 2527034, at *7 (quoting <u>UBS PaineWebber, Inc. v. Aiken</u>, 197 F. Supp. 2d 436, 448 (W.D.N.C. 2002)). Further, "enforcing the collateral security provision of an indemnity agreement in the construction setting serves an important public interest: to encourage sureties to continue to provide bonds for public construction contracts." <u>Id.</u> (quoting <u>First Nat'l Ins. Co. of Am.</u>, 771 F. Supp. 2d at 576). Therefore, the issuance of a preliminary injunction in this case is in the public interest.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Withdraw Motion for Preliminary Injunction [Doc. 40] is **GRANTED,** and the Plaintiff's Motion for Preliminary Injunction Compelling Deposit of Collateral and Access to Books and Records [Doc. 13] is **WITHDRAWN.**

**IT IS FURTHER ORDERED** that the Plaintiff's Second Motion for Preliminary Injunction Compelling Deposit of Collateral and Access to Books and Records [Doc. 37] is **GRANTED,** and Defendant National Bridge is hereby **ORDERED** to (1) deposit collateral security with the Plaintiff in the

amount of $15,910,811.76 and (2) furnish the Plaintiff free access to Defendant National Bridge's books, records, and accounts.

**IT IS SO ORDERED.**

Signed: November 13, 2022

Martin Reidinger
Chief United States District Judge