IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00024-MR-WCM

| | |
|---|---|
| **FRANKENMUTH MUTUAL INSURANCE CO.,** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **NATIONAL BRIDGE BUILDERS, LLC,** ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court National Bridge Builders, LLC's Motion for Reconsideration or in the Alternative Motion to Suspend Order and Stay Action Pending Appeal [Doc. 134].

## I. PROCEDURAL BACKGROUND

The Plaintiff Frankenmuth Mutual Insurance Company ("Frankenmuth") brings this action against the Defendant National Bridge Builders, LLC ("National Bridge"), alleging *inter alia* that National Bridge breached the parties' General Agreement of Indemnity (the "GAI") and that Frankenmuth is entitled to a judgment compelling National Bridge to deposit collateral with Frankenmuth and allow Frankenmuth access to books and

records.[1]  [Doc. 1 at ¶¶ 49-76].  National Bridge asserts Counterclaims against Frankenmuth for fraud in the inducement, unfair and deceptive trade practices, breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with contract, and defamation.  [Doc. 63: Am. Counterclaims at ¶¶ 51-114].

On May 22, 2023, the Court entered a Preliminary Injunction in favor of Frankenmuth, ordering National Bridge to deposit collateral in the amount of $15,910,811.76 and to furnish free access to its books, records, and accounts.  [Doc. 123 at 53].  On June 16, 2023, National Bridge appealed the Preliminary Injunction to the Fourth Circuit.  [Doc. 133].  The same day, National Bridge filed the present motion, seeking reconsideration of the Order granting the Preliminary Injunction.  [Doc. 134].  Alternatively, National Bridge moves the Court to suspend the Preliminary Injunction and to stay this action pending appeal.[2]  [Id.].

---

[1] Frankenmuth also named William H. West, III, William H. West, IV, Gemini III Trust, and Gemini IV Trust as defendants in this action. [Doc. 1].  On September 1, 2022, this Court dismissed the Plaintiff's claims against Defendants William H. West, III, William H. West, IV, Gemini III Trust, and Gemini IV Trust, thereby leaving National Bridge as the only remaining defendant in this action.  [Doc. 34].

[2] Because National Bridge filed its motion for reconsideration and notice of appeal on the same day, the Fourth Circuit has advised this Court that it will treat the notice of appeal as filed as of the date this Court disposes of the present motion for reconsideration.  [See Doc. 137].

## II. DISCUSSION

### A. Motion for Reconsideration

Where a district court issues an interlocutory order "'that adjudicates fewer than all of the claims,' the court retains discretion to revise such order 'at any time before the entry of a judgment adjudicating all the claims.'" Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). Courts "treat[ ] interlocutory rulings as law of the case" and can therefore "revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" Id. (second alteration in original) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)).

Here, National Bridge seeks reconsideration of the Preliminary Injunction Order in order to rectify alleged "accounting discrepancies" relative to the amount of collateral that the Order directed National Bridge to deposit with Frankenmuth. Specifically, National Bridge asserts that the amount of collateral requested by Frankenmuth, and ultimately ordered by the Court, fails to account for the collateral, security, and contract balances that Frankenmuth has already seized from National Bridge. [Doc. 135 at 6].

In the Preliminary Injunction Order, the Court held that Frankenmuth had demonstrated that it is entitled to $15,910,811.76 in collateral under the GAI. [Doc. 123 at 40]. As the Court recognized, Frankenmuth's itemized estimation of its anticipated "Loss" already accounts for all remaining bonded contract proceeds that Frankenmuth has or may receive while completing National Bridge's bonded contracts. [See id. at 42]. Thus, National Bridge's argument that the amount of collateral calculated by the Court fails to account for the contract balances already seized by Frankenmuth is meritless.

As for the other property/assets seized by Frankenmuth, National Bridge fares no better. The right of Frankenmuth as the surety to receive funds or other acceptable collateral from National Bridge upon demand and Frankenmuth's right to seize National Bridge's property upon its default are cumulative under the GAI. Frankenmuth's right to collateral arises under Paragraph 5 of the GAI, which is entitled "Collateral Security." [Doc. 15-1 at 3]. Frankenmuth's separate and distinct right to "seize" and utilize National Bridge's "Property" arises from Paragraph 6 of the GAI, entitled "Assignment," and Paragraph 7 of the GAI, entitled "Remedies." [Id. at 3-4].

Pursuant to the "Assignment" provision, National Bridge assigned Frankenmuth a security interest in, among things:

> all right, title and interest of [National Bridge] in and to all supplies, materials, tools, machinery, plant and equipment of every nature and description that may now or hereafter be related to, or in, on or around the work or the work site covered by the Bonds, and materials purchased or ordered for the performance of the Contract, whether in process of construction, in transit to the site, or in storage elsewhere . . . .

[Id. at 3]. Pursuant to the "Remedies" provision, National Bridge granted Frankenmuth the right in the event of National Bridge's default—in Frankenmuth's sole discretion and without limitation—to "immediately take possession of [National Bridge's] Property, and utilize the Property for the completion of the work under the Contracts without payment for such use ...." [Id.]. The GAI's definition of "Property" includes all of National Bridge's "machinery, plants, equipment, tools, materials, supplies, inventory, [and] vehicles." [Id. at 2].

Significantly, Paragraph 21 of the GAI, which is entitled "Nature of Rights," clarifies that (1) Frankenmuth "shall be entitled to specific performance of the terms of this Agreement in addition to any other remedy at law or equity" and (2) Frankenmuth's rights under the GAI "*shall be cumulative*, and the exercise of or failure to exercise any right or remedy shall not be an election of or waiver of any right or remedy." [Id. at 6] (emphasis added). Therefore, Frankenmuth's right to collateral under

5

Paragraph 5 of the GAI is cumulative to its separate and distinct right to "seize" National Bridge's "Property" under Paragraphs 6 and 7 of the GAI, which forecloses any reconsideration of the collateral amount in relation to the alleged value of any "Property" that Frankenmuth "seized." Accordingly, National Bridge's argument that the Order failed to account for the property and other assets seized by Frankenmuth is without merit.

National Bridge further argues the collateral amount fails to account for the protection that Frankenmuth could receive from its reinsurance carrier. Specifically, National Bridge argues that, "to the extent [Frankenmuth] has received coverage from its reinsurer, said coverage would reduce [Frankenmuth]'s actual losses on bonded projects." [Doc. 135 at 8]. Consideration of Frankenmuth's potential reinsurance coverage into the calculation of the collateral owed, however, would be entirely improper. Even if Frankenmuth were to receive payment under its reinsurance policy during the pendency of this action, National Bridge would not be entitled to any credit or reduction of its liability to Frankenmuth. To the contrary, if Frankenmuth recovers damages from National Bridge, then Frankenmuth would not be entitled to any additional recovery under its reinsurance policy, and it is likely that the reinsurer would subrogate to Frankenmuth's recovery from National Bridge. In either case, the reinsurance coverage would not

shift the risk of loss away from National Bridge or reduce its liability for damages in any way. Accordingly, Frankenmuth's potential reinsurance coverage does not provide a basis for this Court to reconsider the amount of collateral ordered.

For all of these reasons, National Bridge's motion for reconsideration of the Preliminary Injunction Order is denied.

### B. Alternative Motion to Suspend Order and Stay Action

In the alternative, National Bridge moves to suspend the Preliminary Injunction Order and to stay this action pending resolution of its appeal.

The standard for consideration of a motion to stay pending appeal is substantially similar to the standard governing a request for preliminary injunction. Nken v. Holder, 556 U.S. 418, 434 (2009). The Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987). The first two factors are the most critical to the inquiry. Nken, 556 U.S. at 434.

Here, National Bridge contends that it is likely to succeed on the merits of its appeal of the collateral amount. As discussed above, however, the

Preliminary Injunction Order already accounts for any bonded contract proceeds Frankenmuth has received or may receive.

National Bridge next asserts that it would be irreparably harmed absent a stay of the Injunction pending its appeal "because attempting to deposit $15,910,811.76 worth of collateral will bankrupt [National Bridge] and prematurely adjudicate this matter outside of the merits of the parties' claims." [Doc. 135 at 9]. Contrary to National Bridge's contention, the Preliminary Injunction Order is not a "premature adjudication" of the parties' claims. Frankenmuth sought preliminary injunctive relief based solely on an alleged breach of the collateral security and the financial records provisions of the parties' indemnity agreement, and the Court analyzed the Plaintiff's the merits of Frankenmuth's breach of contract claim only with respect to the enforcement of those contractual provisions. As for National Bridge's argument that compelling the deposit of collateral will cause financial ruin, the Court rejects the argument that the mere prospect of financial hardship constitutes irreparable harm. By contrast, as the Court has already held, Frankenmuth stands to suffer irreparable harm absent the award of preliminary injunctive relief due to its lack of collateral and/or access to National Bridge's books, records, and accounts, and the suspension or stay of the Preliminary Injunction would only extend that irreparable harm.

Finally, National Bridge argues that "the public interest favors adjudication of this matter on the merits versus otherwise." [Doc. 135 at 9]. As the Court noted in the Preliminary Injunction Order, however, "[e]nforcing the collateral security provision of an indemnity agreement in the construction setting serves an important public interest: to encourage sureties to continue to provide bonds for public construction contracts." [Doc. 123 at 44 (citation omitted)]. Suspending or staying the Preliminary Injunction pending National Bridge's appeal would not only unjustly reward National Bridge for its alleged misconduct but also would embolden other contractors to breach their collateral and other obligations to sureties, which would in turn discourage sureties from issuing bonds in North Carolina.

In addition to seeking to stay the effect of the Preliminary Injunction Order, National Bridge also asks for a stay of the entire underlying action pending this interlocutory appeal. [See Doc. 134 at 1]. National Bridge offers no argument, however, as to why this action should be stayed while the appeal of the Preliminary Injunction is pending. An interlocutory appeal of a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1) "does not divest the district court of jurisdiction to proceed with respect to matters not involved in the appeal." Arkansas Best Corp. v. Carolina Freight Corp., 60 F.Supp.2d 517, 519 (W.D.N.C. 1999); dmarcian, Inc. v. dmarcian Europe BV, No. 1:21-

cv-00067-MR, 2022 WL 1524744, at *2 (W.D.N.C. May 13, 2022) (citing Arkansas Best with approval). National Bridge's appeal is limited to the legitimacy of the Preliminary Injunction itself. In the interim, this Court retains jurisdiction over the parties' claims and defenses, including Frankenmuth's efforts to obtain final judgments against National Bridge for contractual indemnity and for specific performance of National Bridge's duty to deposit collateral and furnish access to its books, records, and accounts. For all of these reasons, National Bridge's request for a stay of this action pending resolution of the interlocutory appeal is denied.

In summary, the Court concludes that the Defendant has not shown that it is likely to succeed on the merits; that it will be irreparably injured absent a stay; that the issuance of the stay will not substantially injure other interested parties; or that a stay would be in the public interest. Accordingly, National Bridge's motion to suspend the Preliminary Injunction Order or otherwise stay this action pending its appeal of the Preliminary Injunction Order is denied.

# **ORDER**

**IT IS, THEREFORE, ORDERED** that National Bridge Builders, LLC's Motion for Reconsideration or in the Alternative Motion to Suspend Order and Stay Action Pending Appeal [Doc. 134] is **DENIED**.

**IT IS SO ORDERED.**

Signed: July 13, 2023

Martin Reidinger
Chief United States District Judge