IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00024-MR-WCM

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE CO., <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL BRIDGE BUILDERS, LLC, WILLIAM H. WEST, III, WILLIAM H. WEST, IV, GEMINI III TRUST, and GEMINI IV TRUST, <br><br> Defendants. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before this Court on Plaintiff Frankenmuth's "Motion for Summary Judgment," which is actually a motion for partial summary judgment as to Defendant's remaining counterclaims. [Doc. 169].

## I. RELEVANT PROCEDURAL BACKGROUND[1]

On February 10, 2022, Frankenmuth Mutual Insurance Co. ("Frankenmuth") initiated this action against National Bridge Builders, LLC ("National Bridge"), for claims arising from National Bridge's breach of the

---

[1] Both the procedural and factual background of this matter have been set forth more thoroughly in this Court's previous Order granting partial summary judgment to Frankenmuth. [See Doc. 158].

parties' General Agreement of Indemnity (the "Indemnity Agreement"). [Doc. 1]. On May 18, 2023, the parties filed cross-motions for partial summary judgment. [See Docs. 117, 119]. On August 18, 2023, this Court granted Frankenmuth's motion and denied National Bridge's. [See Doc. 158]. However, neither party moved for summary judgment on National Bridge's Third and Fourth Counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing.

At the final pretrial conference, on August 25, 2023, it became apparent that National Bridge's Third and Fourth Counterclaims could be efficiently addressed through dispositive motions, and, upon request of the parties, this Court extended the deadline to file such motions through September 22, 2023. [See Doc. 168]. Frankenmuth moved for summary judgment on National Bridge's Third and Fourth Counterclaims on September 22, 2023. [Doc. 169]. National Bridge filed its Memorandum in Opposition on October 11, 2023, and Frankenmuth filed its Reply on October 20, 2023. [Docs. 174, 178]. Having now been fully briefed, this motion is ripe for disposition.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers, admissions, stipulations, affidavits, and other materials on the

record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)&(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003).

"Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." Ballengee v. CBS Broad., Inc., 968 F.3d 344, 349 (4th Cir. 2020) (quoting News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)). This Court does not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden shifts to the nonmoving party to demonstrate that a triable issue

3

exists. Id. When considering a motion for summary judgment, the pleadings and materials presented must be viewed in the light most favorable to the non-movant, and all reasonable inferences must be drawn in the non-movant's favor. Adams v. UNC Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

## III. FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to National Bridge as the non-moving party, the following is a recitation of the relevant facts.

From April 27, 2018, through March 23, 2021, Frankenmuth, acting as National Bridge's surety, issued bonds covering several of National Bridge's construction contracts. [Doc. 132: Sixth Maloney Decl. at ¶ 10]. Along with the bonds, Frankenmuth and National Bridge entered into the Indemnity Agreement, whereby National Bridge agreed to indemnify Frankenmuth for any losses it suffered on the bonded contracts. [Doc. 1-1 at 3]. The Indemnity Agreement states in pertinent part:

> [National Bridge] shall furnish upon demand, and [Frankenmuth] shall have the right of free access to, at reasonable times, the records of [National Bridge] including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. . . .

4

> [National Bridge] shall permit any of [Frankenmuth's] officers, employees, agents or other representatives to visit and inspect upon reasonable notice during business hours any of the locations of [National Bridge] (provided that, while a Default exists, [Frankenmuth] may make such visits and inspections at any time without prior notice), to examine and audit all of [National Bridge's] Property, books of account, records, reports and other papers, to make copies and extracts therefrom and to discuss its affairs, finances and accounts with its officers, employees and independent certified public accountants.

[Doc. 1-1 at 4, 7]. The Indemnity Agreement further obligates National Bridge to "promptly upon request, provide, or . . . cause to be furnished, to [Frankenmuth] . . . such other financial, operational and other business information as [Frankenmuth] may request." [Id. at 7].

In 2019, Frankenmuth began receiving claims against the bonds and was alerted that National Bridge had breached some of the bonded contracts. [Doc. 39: Second Maloney Decl. at ¶ 3]. Throughout 2020 and 2021, Frankenmuth continued receiving notices that National Bridge was not fulfilling its obligations under these contracts. [Doc. 113: Fifth Maloney Decl. at ¶ 12; see also Doc. 39-3: Letter of Concern]. At a meeting on September 1, 2021, National Bridge told Frankenmuth that it lacked the financial ability to complete the bonded contracts and as such, that Frankenmuth was facing significant losses. [Doc. 113: Fifth Maloney Decl. at ¶ 13].

5

At this meeting National Bridge informed Frankenmuth that it needed an advance of at least $1,500,000 to enable completion of the bonded contracts. [Id. at ¶ 14]. After the meeting, on September 8, 2021, Frankenmuth contacted National Bridge, stating, "[w]e are on board in regards to partnering with you and assisting with funding until cash flow improves." [Doc. 175: West Decl. at ¶ 7]. On September 15, 2021, Frankenmuth loaned/advanced National Bridge $750,000. [Doc. 113: Fifth Maloney Decl. at ¶ 14]. At a meeting on September 16, 2021, National Bridge informed Frankenmuth that it would not agree to funds control and personal guarantees covering the advanced funds, and that it would return the $750,000 if these were required. [Doc. 63: Amend. Answ. at 15 ¶ 29].

Instead, National Bridge offered to provide Frankenmuth a list of checks that it wrote each month. [Id.]. Frankenmuth represented that this would be sufficient. [Id.]. After the first $750,000 was advanced, Frankenmuth continued receiving notices regarding National Bridge's unsatisfactory performance. [Doc. 113: Fifth Maloney Decl. at ¶ 14]. On December 9, 2021, Frankenmuth advised National Bridge that Frankenmuth would consider advancing it an additional $750,000 if it agreed to certain conditions. [Id. at ¶ 23; Docs. 113-15: 12/09/21 Letter]. However, National

6

Bridge never agreed to these conditions, and Frankenmuth never advanced the additional $750,000. [Doc. 39: Second Maloney Decl. at ¶ 6].

**IV. DISCUSSION**

Under North Carolina law, "[a] contract is simply a promise supported by consideration, which arises . . . when the terms of an offer are accepted by the party to whom it is extended." McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005). "It is well established that in an action for breach of contract, defendant's promise must be supported by consideration for it to be enforceable." Labarre v. Duke Univ., 99 N.C. App. 563, 565, 393 S.E.2d 321, 323 (1990). "[C]onsideration sufficient to support a contract or a modification of its terms consists of any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee." Lee v. Paragon Grp. Contractors, Inc., 78 N.C. App. 334, 337, 337 S.E.2d 132, 134 (1985). "Any new promise by defendant must . . . be supported by additional consideration." Labarre, 99 N.C. App. at 565, 393 S.E.2d at 323.

In its Third Counterclaim, National Bridge alleges that "[Frankenmuth] and [National Bridge] entered into a valid and enforceable agreement whereby [Frankenmuth] promised to pay [National Bridge] $1,500,000.00 in

7

exchange for [National Bridge] providing a list of checks that [it] writes keeping [Frankenmuth] informed of the projects' monthly progress." [Doc. 63 at 23 ¶ 79] (emphasis added). The Indemnity Agreement, however, already provided Frankenmuth with "free access" to National Bridge's "books, papers, records, documents, contracts, reports, [and] financial information," and required National Bridge to "promptly upon request, provide, or . . . cause to be furnished, to [Frankenmuth] . . . such other financial, operational and other business information as [Frankenmuth] may request." [Doc. 1-1 at 4, 7]. These provisions already required National Bridge to provide Frankenmuth information regarding any checks that National Bridge might write and therefore, National Bridge's subsequent promise to provide Frankenmuth with a list of the checks it wrote cannot serve as consideration for Frankenmuth's alleged promise to advance $1,500,000.[2] See Burton v. Kenyon, 46 N.C. App. 309, 311, 264 S.E.2d 808, 809 (1980) ("a promise to perform an act which the promisor is already bound to perform is insufficient consideration . . . ."); see also Labarre, 99 N.C. App. at 565, 393 S.E.2d at 323.

---

[2] This Court has already concluded that the Indemnity Agreement is valid and enforceable. [See Doc. 158 at 32].

In its Memorandum in Opposition [Doc. 174], National Bridge puts forward several theories of consideration that it had not raised previously. Specifically, National Bridge contends that:

> in exchange for [Frankenmuth's] promise to pay the [f]unds, [National Bridge] would continue its operations on the bonded projects (benefit to [Frankenmuth]), prioritize work and/or administration of the bonded projects (benefit to [Frankenmuth] and detriment to [National Bridge]), maintain the labor, materials, and equipment necessary to progress the bonded projects (benefit to [Frankenmuth]), avoid project defaults (benefit to [Frankenmuth]), . . . and refrain from seeking other sources of funding (detriment to [National Bridge]).

[Doc. 174 at 1-2]. National Bridge further argues that Frankenmuth's agreement to advance it $1,500,000 allowed Frankenmuth to meet its reinsurance deductible without incurring certain losses. [Id. at 12, 14].

National Bridge was already obligated under the bonded contracts, the bonds, and the Indemnity Agreement to complete the projects. [See Doc. 158]. As such, its agreement to continue work on the projects, and to take the necessary incidental steps for work to continue, does not amount to new consideration. Likewise, National Bridge's reinsurance arguments are unavailing because the Indemnity Agreement already entitled Frankenmuth to recoup any of its losses on the bonded contracts from National Bridge. Additionally, there is no evidence in the record that Frankenmuth

9

discouraged National Bridge from seeking alternative sources of funding; to the contrary, Frankenmuth twice alerted National Bridge to alternative sources of funding. [See Docs. 78-1: Fourth Maloney Decl. at 7 ¶ 9; 127-3: Text Messages from Frankenmuth's Senior Director at 1]. As a result, there was no valid consideration for Frankenmuth's alleged promise to pay National Bridge $1,500,000. Therefore, National Bridge's Third Counterclaim for breach of contract fails as a matter of law and is dismissed with prejudice.

Turning to National Bridge's Fourth Counterclaim, "[t]he invalidity of [its] breach of contract claim on these facts is . . . fatal to [its] claim for breach of the implied covenant of good faith and fair dealing." Cordaro v. Harrington Bank, FSB, 260 N.C. App. 26, 38-39, 817 S.E.2d 247, 256 (2018) (citing Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996), disc. review denied, 345 N.C. 344, 483 S.E.2d 172 (1997)). "A defendant cannot breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract." McDonald v. Bank of N.Y. Mellon Tr. Co., Nat'l Assoc., 259 N.C. App. 582, 587, 816 S.E.2d 861, 864-65 (2018). Here, National Bridge failed to establish the existence of an enforceable contract, much less a breach of

that contract. As such, its Fourth Counterclaim fails as a matter of law and is dismissed with prejudice.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. 169] is **GRANTED**, and Defendant's Third and Fourth Counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Signed: January 10, 2024

Martin Reidinger
Chief United States District Judge